# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| UNITEDHEALTHCARE INSURANCE COMPANY, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-157 (RMC) |
| THOMAS E. PRICE, M.D., Secretary, Department of Health And Human Services, *et al.* | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The parties to this action, which challenges a new rule under the Administrative Procedure Act (APA), 5 U.S.C. § 702, are simultaneously engaged in two other cases and the Department of Health and Human Services (HHS) asks to stay this one. HHS is the Defendant in the immediate case and the Plaintiff in the other two, both brought under the False Claims Act, 31 U.S.C. § 3729. UnitedHealthCare Insurance Company (United), the lead Plaintiff in this action and the Defendant in the two False Claims Act cases (FCA Cases), opposes. In addition, America's Health Insurance Plans (AHIP), an industry group, has submitted an *amicus* brief supporting United's opposition and distinguishing the suits. HHS has replied to both United and the *amicus*, and, in the alternative, moved for a 90-day extension of time to file its Answer. Both motions are ripe for review.

While the two FCA Cases may involve many of the same parties, lawyers, and otherwise serve as other fronts in a legal conflict between HHS and United, the question before the Court is not whether the immediate matter grows out of strategic thinking by one or more

1

parties, or occurs within the context of other litigation, but rather, more simply, whether the issues in the two FCA Cases are so similar as to render the matter before the Court duplicative or potentially confusing. The Court concludes, for the reasons stated below, that this lawsuit is neither and it will therefore deny the Government's motion to stay. The Court will, however, grant the Government's motion for an extension of time to answer the Complaint until July 14, 2017, as requested.

## BACKGROUND

In this matter, United seeks review of an administrative rule, promulgated in 2014 and codified at 42 C.F.R. § 422.326 (the 2014 Overpayment Rule), that applies to insurers participating in the Medicare Advantage (MA) program. MA insurers provide Medicare benefits to eligible beneficiaries who elect to participate in an MA program instead of the traditional Medicare program. The Centers for Medicare and Medicaid Services (CMS), a constituent agency of HHS which administers traditional Medicare, reimburses MA insurance providers for services rendered to Medicare beneficiaries. The 2014 Overpayment Rule concerns MA providers' obligations to report and repay any overpayments made by the CMS to an MA provider. United argues that the 2014 Overpayment Rule, which it says imposes a stricter standard on MA providers than on CMS itself when paying Medicare benefits, is inconsistent with the Medicare statute's requirement that CMS "ensure actuarial equivalence" between traditional Medicare and MA programs and thus violates the APA. United filed suit in January 2016, and the Court denied an HHS Motion to Dismiss on March 31, 2017. *See* Mem. Op. [Dkt. 25].

Simultaneously, United and HHS are engaged in the FCA Cases: *United States ex rel. Swoben v. Secure Horizons*, No. 09-5013 (C.D. Cal) (*Swoben*), and *United States ex rel. Poehling v. UnitedHealth Group*, 11-cv-258 (W.D.N.Y) (*Poehling*). Both cases allege, *inter*

*alia*, that United knowingly misreported or knowingly caused other parties to misreport overpayments as part of a scheme to inflate its Medicare reimbursements. *See* Reply Ex. A [Dkt. 36-1] (*Swoben* Complaint) ¶¶ 8-9; *Poehling* Complaint [Dkt. 37-1] ¶¶ 8-12. While both suits were originally brought by private plaintiffs, HHS has recently intervened in both, filing its *Swoben* Complaint on May 1, 2017 and its *Poehling* Complaint on May 16, 2017.

All parties agree that the allegedly fraudulent conduct in *Poehling* and *Swoben* predates the 2014 Overpayment Rule, and that the Rule is not at issue in either FCA Case. *See* Mot. to Stay [Dkt. 28] at 5; Opp. [Dkt. 31] at 5. However, part of the HHS planned argument in both *Poehling* and *Swoben* is that United's alleged activities violated its obligations to perform due diligence as required under the Medicare statute. Mot. to Stay at 4. United, in turn, intends to defend in part on its interpretation of the CMS obligation to treat MA providers with "actuarial equivalence." *Id.* at 5.

Because of the potential common questions of defining actuarial equivalence and the diligence obligations of MA providers, HHS asks the Court to stay this matter until the FCA Cases are resolved.

**ANALYSIS**

Courts disfavor duplicative litigation; it has the potential to waste judicial resources, muddy legal waters with conflicting rulings, and can strain the capabilities of litigants. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012). A court's ability to stay proceedings flows from its inherent authority to manage its own docket. While no firm rule governs a court's decision to stay a matter, it must balance "equitable considerations" when assessing whether a stay is warranted. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325

F.3d 346, 350 (D.C. Cir. 2003).[1] "The factors relevant to wise administration here are equitable in nature [and] an ample degree of discretion . . . must be left" to the district courts. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952).

The Government asserts that equitable considerations favor a stay here. The private plaintiffs in the FCA Cases filed their complaints under seal before United filed this suit, although HHS did not intervene in the FCA Cases until after this action was filed. HHS contends the FCA Cases will develop a full factual record that will allegedly "show UnitedHealth's knowledge of its due diligence obligations, its implementation of compliance programs relating to ensuring the validity of the diagnoses it submitted to Medicare for risk adjustment payments, and its decision to terminate those compliance efforts." Mot. to Stay at 7.

The Court is not convinced these considerations warrant a stay here. This APA case is limited to whether CMS acted beyond its authority when promulgating its 2014 Overpayment Rule. It does not concern the actions of United in any way, and any analysis by the Court would be limited to the administrative record behind the 2014 Overpayment Rule and the statute. Any factual record developed in the FCA Cases would have very limited relevance, if any, to this APA review of the 2014 Overpayment Rule.

Similarly, judicial resolution of the FCA Cases will inevitably involve a highly fact-specific analysis of United's actions, only part of whose defense would involve Medicare's

---

[1] One rule of thumb is the "first-filed" rule, which counsels that, "'[w]here two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.'" *UtahAmerican Energy*, 685 F.3d at 1124 (quoting *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) and predecessors). While the first-filed rule implicates the same equitable considerations relevant here, the first-filed rule is not applicable in this situation, firstly because the causes of action in the FCA Cases are different from those found in this matter, and secondly because HHS intervened in both FCA Cases after this matter was filed. *See id.*; *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009).

requirement of actuarial equivalence. The complexity of the FCA cases means their resolution could take a number of different forms, including resolution without any reference to questions potentially common to this action.

In short, it is highly unlikely that a future decision in the FCA Cases would address, much less resolve, the APA challenge here. Similarly, any decision in this matter will not answer the most relevant questions in the FCA Cases. Whether a government contractor knowingly engaged in fraud, and whether a government agency appropriately promulgated a rule several years later, are simply too different from one another to warrant a stay, even if such lawsuits may touch upon similar questions of statutory interpretation. The equitable considerations are not so strong that all matters potentially implicating similar legal issues, with otherwise separate facts and claims, should be heard sequentially throughout the federal court system. And a difference of opinion among district court judges is not so unusual as to foreclose timely consideration of this matter.

Because United's alleged behavior in the FCA Cases is distinct from HHS's actions in promulgating the 2014 Overpayment Rule, the fact that the same parties are in all three actions is only a distraction. Further, as the *amicus* indicates, the question of the 2014 Overpayment Rule has industry-wide implications, which, clearly, the FCA Cases do not. *See Amicus Curiae* Br. of America's Health Insurance Plans [Dkt. 35].

HHS suggests, however, that it is not mere coincidence that United is a party in all three actions, and that this lawsuit is merely a strategic attempt by United to end run the FCA Cases. United retorts that HHS only intervened in the FCA Cases because United filed this APA challenge. Motivated reasoning may well have influenced either—or both—parties in their litigation decisions; however, the Court is not here to referee the strategic decisionmaking

5

process that goes into any complex litigation. Neither party has given the Court reason to believe that the other has acted in bad faith; it has been presented with a live legal controversy and will treat it as such.

In sum, the Court disagrees with HHS that the cases and issues are sufficiently alike to warrant a stay in this review of a new administrative rule. The two FCA Cases will require considerable discovery and take much longer to bring to conclusion. In stark contrast, the 2014 Overpayment Rule will rise or fall on the administrative record that preceded it. The relevant facts and legal standards will be entirely different. In addition, the Secretary did not join either FCA Case until after this suit was filed, although each was filed by a relator years ago.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Stay, Dkt. 28, is **DENIED**; and it is

**FURTHER ORDERED** that Defendants' Motion for Extension of Time to Answer the Complaint, Dkt. 30, is **GRANTED**. Defendants' Answer shall be filed no later than July 14, 2017.

Date: June 14, 2017

/s/
ROSEMARY M. COLLYER
United States District Judge